Third case of the day, Hall v. Jung May it please the court. My name is Maurice James Salem. I represent the appellant in this case. The appellant is a father and a husband who was out on a dinner date with his wife and another couple, and at the end of that date he was arrested by a police officer, a Chicago police officer, and in the process of that arrest, the police officer broke my client's arm. The only one question before the jury was whether or not Officer Jung, the appellee in this case, used reasonable force. That's the only question the jury had to determine. No question that your client was resisting, was there? There were allegations that there was resistance, and there was a videotape drawn. What time of day was that, or night? It was between the 18th and the 19th. It was late night, early morning. Well, I read somewhere 2.20 in the morning. Is that correct, or is that a misprint? Yes, Your Honor, that's correct. And in the video, this is one of your objections, is that there were people lined up to eat, and people walking back and forth. There were other people in the video? Yes, Your Honor. At 2.20 in the morning. That seems amazing to me, but anyway, whatever this is, they were out to dinner. Yes, Your Honor. All right. Where was this exactly? 79th and Stony Island? Yes, Your Honor, 79th and Stony Island. Is there a restaurant there or something? There was a restaurant there. They were coming out of the restaurant, the group, and the police officer went to question my client. In the process of the questioning, the police officer concluded he wanted to do an arrest, and in the process of doing the arrest, and it's on the video, he broke my client's arm. But, Your Honor, the issue that's before you here is whether or not the lower court erred by not allowing my client to have an expert witness. Now, during the discovery, there was a motion where the lower court ruled that my client denied my client's expert witness on the basis that there was nothing to rebut. What was that expert supposed to say? It's in the report, Your Honor, and I submitted that expert report in my brief, and the expert would have said, Your Honor, that using the wrist lock armbar in that circumstances was unreasonable force, and it's not according to the training of the police officers to use reasonable force. That's a rebuttal to what the arresting officer and his partner said on the trial. The court said they weren't put in as experts, they were just, in their own experience, as police officers. Well, Your Honor, that's an issue for you to consider here. Let's, for argument's sake, say that they're right, that these two officers are not experts. Well, now let's look at what they testified. Well, they weren't qualified as experts. Excuse me? There's nothing in the record to indicate they were called as experts, they were not qualified as experts, or offered as experts. That's correct. They just told what they did or saw. That's correct. Now... What's to rebut? Well, here's what's to rebut. There are four things to rebut, Your Honor. First, they testified that they were trained in the use of force. Now, they also... Was that direct examination or cross? Well, yes. The other thing, Your Honor, is the partner testified as to a process, the use of force matrix system. Now, and also they testified to the use of what's called a wrist lock armbar. Now, on the issue of whether it's reasonable or not, you had two officers, keep in mind, whose job is to use force. That's their job, to use force. They're trained in it. They're using technical terms... You didn't answer Judge Fowler's question. Was this a direct or cross? Oh, this was at a direct, Your Honor. I believe I submitted the transcript. You mean the prosecution asked whether they were trained in the use of force? Yes, Your Honor. Yes. I believe that when they were asked what their training was and their experience, that's what's in there, and I believe I... You mean they, in a general way, said that they were trained to be police officers, which involves the use of force? Yes, Your Honor. That's correct. You needed an expert to discuss that? Well, I needed an expert to rebut that, because here I am. Well, I needed an expert to say that whether or not a wristlock armbar or the use of force matrix was reasonable under these circumstances shown in the video. That's a jury question. Excuse me? That's a jury question. It doesn't need an expert witness. They see the pictures, they hear the testimony, and they decide whether they think it's reasonable or not. Well, Your Honor, keep in mind now, would a jury know when to use a wristlock armbar, Your Honor? Would a jury know anything about the use of a force matrix system, Your Honor? I submit to you that they don't. Only a cop would know that, or you have to be... Someone trained... Well, Your Honor, when I was on a wrestling team... The question we asked the jury to resolve is whether or not the actions of the police officers under the circumstances was reasonable. Correct. They can see it, they can hear it, they can watch it. Why does an expert have to jump in? The case that I cited, Daubar v. Miller Dow Pharmaceutical, required the lower court to do what's called a Daubar analysis to determine whether you need an expert. Now, the lower court failed to do that. I submit, on that basis alone, you should reverse this case. The expert you offered? The expert we offered, we offered... He didn't use that. He just blocked them, that's all. That's it. Yeah, he said... He said you don't need them. But the lower court needed to use the Daubar analysis to determine whether you need an expert, Your Honor. And we submitted our expert report that rebutted the police officer's testimony with respect to the highly technical terms such as a risk-lock armbar, the use of a force matrix. All these technical terms, Your Honor, I submit to you, laypeople who are not trained in the use of force do not know. And in the Daubar decision, Your Honor, it specifically states that where you need to assist the jury in their task. What is their task? Their only task is to determine whether reasonable force was used. Now, using a risk-lock armbar, Your Honor, in that situation, I submit to you, is an illegal act in wrestling, high school or college wrestling. So, but a layperson is not going to know that, Your Honor. And a layperson is not going to know all the specific training that officers train to use force. And this is the, I submit to you, is the expertise of the officers on the stand. And this is why we simply needed an expert witness to rebut all that, Your Honor. But let me also say, Your Honor, this issue was on a motion in discovery. We also seek to reverse on the basis of four trial errors. Now, I would not, I understand that the error has to be significant and very effective to reverse a trial. It's a lot. With respect to the expert witness, I strongly urge this court to reverse it because it is fundamentally unfair to have one side say to the jury, this is reasonable use of force, all this technical terms, all this training. And on the other side, you have absolutely nothing. So that is, I believe that is an injustice there, Your Honor. But with respect to the four issues that at the trial, the errors that were committed, that was done at the trial, I want to point to the courts, one in particular I want to discuss and link it to the expert. And that is when the attorney for the city came up to the jury and said to the jury that because my client's wife was not present in the court, he used that against him. Where's his wife? His wife wasn't there to defend him. That's, I think, underhanded and prejudicial. But, Your Honor, I think it's consistent with the fact that they withdrew their expert witness. You see, they had expert witness, Mr. Smith. They withdrew them. Why did they withdraw them? So that they could move to knock out our expert witness. That was, I believe, an unhanded move that they did. It was a tactical move that they did to knock out our witness by pulling their witness away. Because, Your Honor, I submit to you that they recognize their witness is as trained and educated as the police officers. As a matter of fact, our witness is as trained and educated as the police officers. You did not call Jung as a witness, did you? Yes, I called Jung. Jung is the arresting officer. You called him as a witness. I called him as a witness. And so you wanted an expert to impeach that witness. I needed an expert to impeach him and his partner, Your Honor. But he's your witness. Well, he's the adversary witness. You would notice he's an adverse witness, I guess. Right, as adversary witness. I would need someone to impeach him. Absolutely, Your Honor. I would also need someone to impeach, unfortunately, his partner who was, sadly to say, covering up for him. If he was trained as he says he was trained, he wouldn't be saying those things on the stand that they use reasonable force. To use an armbar wrist lock is an illegal act in wrestling. I'm a wrestler myself, so I can tell you that. And this is something you don't do that. You don't do things like that. I wrestled, too. Say again. Yeah. I wrestled in college. I wrestled in high school and all state. This is not a wrestling match. Well, Your Honor, but here's the thing. If I did those moves, the whistle would be blown. I would lose the six points in the match because that's an illegal act. But there are no whistleblowers. Well, there wasn't at 2 in the morning at that time. Here, Your Honor, I'm asking this court to be the whistleblowers and to let us simply go back down and present our side of the story. I mean, think about it. If I was part of the jury, I would rule in favor of the police officers. We simply needed someone to say this is not reasonable force. We had nothing on our side. This was fundamentally unjust trial. And I really believe where the lower court dropped the ball is I think they didn't look at the Darbert analysis. Had they done the Darbert analysis, they would have realized, the lower court would have realized, wait a minute, we need someone to assist the jury with these technical terms. Did you tender him as an expert witness prior to the cutoff date? Excuse me, Your Honor? Did you tender your witness as an expert prior to the cutoff date set by the magistrate? Let me explain that. Yes, we did. To answer your question strictly speaking, yes, we did. The only reason we weren't allowed an expert witness was because they withdrew theirs knowing they didn't need them because they already had expert witnesses. And then they moved to knock out ours. So the only basis for us not having an expert witness was because the lower court... They didn't call an expert. No, we did call an expert. We gave them a police report. No, no, I said that they didn't call an expert. They did submit an expert police. They were going to. They submitted a report for their expert. They already submitted a report and everything. At the last minute when they realized they don't need an expert, and because, Your Honor, here's the thing. Initially, we were denied expert for procedural reasons, but that's behind us. Then eventually we were allowed, and the final reason we were not allowed was because the lower court believed there was nothing to rebut. And the lower court simply made a mistake in that case, Your Honor. What's on the video? The video is the entire arrest, and the jury had a... Who took that? It was the store's video. Oh, okay. The store's video, and so the officer did not know that it was being recorded. Does it show her running out of the restaurant? Does it show what? Whatever her name is. I don't know. The wife? The woman. Woody. Woody. They show her coming to assist her husband. They show her, and they show the officers... She had blood on her face coming to assist her husband? Absolutely, Your Honor. The characteristics that they put in there is false, Your Honor. Here's what happened, what's in my brief, Your Honors. The reason she didn't come to testify that morning was because she took her... And this is at least what we said to the judge, and we said to them. She took her child to the emergency room. And also, Your Honors, the other error the court did, they didn't allow us to use her deposition to the jury. So at the closing arguments, counsel was arguing to the jury, hey, the wife was not here, so therefore the husband must be guilty. But counsel knew from the morning that the wife had to take the child to the emergency room, and she knew that the judge denied admission of the deposition. Were you the trial lawyer? Myself and Ms. Nadra El-Rabadi. Did anybody ask for a continuance to get the witness, the wife, there? Yes, we did, Your Honor, and it was towards the last day, and it was at the end, and we asked to submit the depositions. No, no, did you ask to have the trial put over so you could get the witness there? Yes, Your Honor, and we were not allowed. The child had to be finished. She didn't come two days in a row. Excuse me? The first day she had to take the child to the doctor, and the second day she didn't show up either. The day that she was supposed to show up, what we said to the judge when we asked him to admit the deposition is that my understanding, she took her son to the emergency room on that day that she was supposed to testify. Previously, Your Honor, the prior day, her child was sick, and she was with the child the prior day. So that's the whole situation. I see my time is up. Your time has expired. Thank you, Your Honors. Thank you. Ms. Laden? May it please the Court. Your Honors, the jury found for Officer Jung on Mr. Hall's claim for excessive force after repeatedly viewing a videotape that depicted the entire incident. On appeal, Mr. Hall raises four issues about the manner in which the district court conducted the trial. However, he fails to confront that reversal on any of these issues requires a showing of prejudice. In responding to our point about this in his reply brief, Mr. Hall continues to maintain that the only transcripts necessary for this court's review are the two officers' transcripts, but that is incorrect. This court has made clear that a complete record is necessary for this court to perform its function and provide meaningful review on evidentiary issues like the ones that Mr. Hall is currently raising, and we submit that the judgment of the district court should be affirmed on the basis that Mr. Hall simply can't satisfy his burden to show prejudice because he has not supplied this court with the complete trial transcripts, nor has he supplied the deposition transcript of Ms. Woody or the medical records of the documents that he is claiming are the basis for his errors. In addition, on many of these issues that he's pressing in front of this court, he either failed to preserve the issue below or else his appellate presentation is lacking. This court could also affirm the judgment for those reasons. All that aside, this morning I will briefly address the merits on some of the issues that have been discussed this morning, and that include the rebuttal expert and Ms. Woody's deposition transcript and the mistrial. For the remaining issues, we'll rest on our brief unless the court has specific questions. Turning first to the rebuttal expert issue, that was not an abuse of the district court's discretion, and the presentation this morning, counsel has incorrectly set forth the facts about what occurred. Mr. Hall had the opportunity to provide an expert in this trial. He could have called an expert. However, he failed to turn over his expert's report by the magistrate's deadline, and for that discovery violation, he was barred. He gave the name and the fact that he intended to call, but he didn't give the report. Correct, Your Honor, and that was a different expert than the one he's now complaining about. So there were two experts. First, there was an expert called, I believe the last name was Gout, and that expert was the expert he missed the deadline with. He didn't supply the report on time. He was barred from calling that expert. Then the magistrate gave Officer Jung an opportunity to call an expert. Initially, the officer was going to call an expert, but prior to the magistrate's deadline to turn over the materials to disclose his expert report, there was no expert report that Officer Jung's expert submitted because he was withdrawn before the deadline. At that point, there was no expert left in the case. So Mr. Hall was going to be given an opportunity to call a rebuttal expert who is now Mr. Williams, the one he's bringing forward now. However, because Officer Jung did not have an expert, there was no expert to rebut. The nature of a rebuttal is that it's responding to something from the other side's case. Officer Jung, within a timely manner, withdrew his expert, never supplied an expert report of any sort. There was indeed no expert to rebut. That was all done by the magistrate before it was returned to the district court for the trial proceedings. Would there be any opportunity for an expert just to call him in and say he wants to rebut and look at the video and all that about what the officer did? Or would there be a reason he couldn't do that? You mean during the course of the trial proceedings? Well, if Mr. Hall believed, that brings up another point, Your Honor. If Mr. Hall believed that the testimony from the officers, which we submit is factual testimony, not opinion testimony, but if Mr. Hall thought that that was testimony that required expert rebuttal, he had the obligation to raise that objection in front of the district court. He did not object to the questions that he is citing in his brief to this court. Did the officer say this is something that I did this particular risk hold? Did he say that's something I was taught? Your Honor, we don't have the complete transcripts. Well, that's not there. From my understanding, from what is in the record, Officer Young was testifying about the factual, like they would stop the video and say, okay, now describe what happened here. He wasn't saying, like, in my expert opinion, this is. I understand that, but sometimes the question, the comment is I was taught that's how to, whatever. Not to my knowledge, Your Honor. Officer Jones, who was his partner, was the one who gave the testimony. So then we come down to the question of what is to be rebutted, right? Right. I mean, if he thought there was something to rebut, he had the obligation to raise that, to bring it to the court's attention, and to ask to call an expert in rebuttal. He did not do that. He forfeited any claim for that kind of error, but there really wasn't anything to rebut because it was just factual description about what had occurred. And the jury was able to view the video along, you know, the witnesses were viewing it in the course of the trial. So they were able to view with their own eyes what was occurring and to make a determination. Was that excessive force? Was it not excessive force? This was not a case in which it was only the testimony of two witnesses who contradict each other. The jury saw the video. They saw what happened. Does that video show Woody running out of the restaurant with a bloody face? Your Honor, the video is not in the record either. Is the video not on the record? No, Your Honor. The video is not in the record. We're doing all this with no video on the record. You don't have the trial transcripts. You have two full witnesses, the two officers. You have part of Mr. Hall. You don't have all of Mr. Hall's testimony even. And you have snippets of a couple of Dr. Staser. That's it. That's why we submit that there is not the record that you would need to make the ruling that there was prejudicial error that warrants a reversal. Does somebody testify? Who testifies seeing Woody coming out with a bloody face? The officer's testimony was the way the encounter began is down the street. So they weren't in front of the rest. They were not. You could draw the inference from what is in the record that they were not in front of the camera at the time the encounter began. According to the officers, Ms. Woody ran into the street, flagged them down with blood on her face, and then they got out of the car, and then Officer Young approached Mr. Hall. That's when they was by the restaurant security camera that was able to depict what happened. The initial encounter, the initial stop, was not part of the video to my knowledge. Moreover, one of your honors asked about whether there was evidence that Mr. Hall resisted arrest. In fact, there was only one claim before the jury. That was the excessive force claim because Mr. Hall pled guilty to resisting arrest. He was, therefore, heck barred from bringing any kind of false arrest claim and challenging the validity of the rest. So the only issue for the jury was whether the force was excessive. As I said, there's a videotape that depicted it. Do you know the name of the restaurant? Just as an idle thing. I believe it was the Maxwell Street Hot Dog Stand on 79th and Stony Island. Which, north or south of the hospital? Jackson Park Hospital. Which direction? Honestly, Your Honor, I don't know. I'm sorry. Closer to downtown or farther away from the hospital? From the hospital. Do you know where the hospital is? Honestly, Your Honor, I'm sorry, I don't. Which one? Jackson? No, on Stony Island. Stony Island is? The hospital, Stony Island. The Jackson Hospital is on Stony Island. Jackson Hospital is on Stony Island. Yeah, that's what I said. I was asking you where it was. But it's south of where 79th Street is. Oh. I'm sorry, Your Honor, I don't know. I grew up in Woodlawn, so I'm fairly familiar with the area. In any event, so again, the magistrate's ruling was not an abuse of discretion. This all happened before we got to the trial. That there was no expert on the other side to rebut, so Mr. Hall is not entitled to call a rebuttal expert. Moreover, there's no prejudice from not admitting Mr. Williams' expert opinions, which we submit would have been inadmissible because they went to the ultimate legal issue that the jury was going to have to resolve, or else they tried to resolve factual inconsistencies. But in any event, this court doesn't have the record it would need to determine that but for the admission of this expert, the result could have been different at the trial. Now, turning to Ms. Woody's deposition transcript, I just want to point out that on appeal, Mr. Woody is, or excuse me, Mr. Hall is claiming that Ms. Woody's transcript should have come in under a provision of the federal rules that he did not rely on below. On appeal, he's claiming the transcript was admissible under Rule 32A-4B, and that has to do with being 100 miles from the courtroom. In that case, the deposition transcript can come in. He didn't rely on B below because Ms. Woody was not 100 miles from the courthouse. As Mr. Hall's counsel is saying now, she is supposedly ill. So he has forfeited reliance on B because he never raised B below. What he did raise below C, he does not brief on appeal. He does not explain to the court why the district courts incorrectly refused to admit Ms. Woody's deposition transcript under C. So on appeal, he's forfeited a challenge to the ground the district court actually did rely on, which was C. Now, if this court looks at the transcript from what the district court's determination, the court will be convinced that there was no abuse of the district court's discretion. The district court was very thorough in giving three cogent reasons why the deposition transcript didn't satisfy. We will do that. We will do that. Thank you. Okay. And finally, there's no prejudice, apart from there being no abuse of discretion, no prejudice from not admitting the transcript because Mr. Hall, again, he had an excessive force claim. Ms. Woody's testimony was going to go to what came up, what led up to the incident. Did she actually approach him? Did she have blood on her face? And so it was not prejudicial to Mr. Hall to omit, to exclude an irrelevant transcript. The issue the jury actually had to decide, it could see with its own eyes what happened. And moreover, Ms. Woody's testimony, Mr. Hall in his reply brief concedes, would have been consistent with the videotape. So at best, that's an admission that it would have been cumulative. The jury had the videotape. It didn't need the deposition transcript as well. It was not prejudicial to Mr. Hall for the deposition transcript that it's cumulative not to come in. And then finally, on the mistrial argument regarding counsel's comments, counsel's comments were completely permissible. They drew a permissible inference, but the counsel did not actually say that there would have been unfavorable testimony from any of the witnesses. Counsel simply referenced the permissible inference that because there was no one to corroborate Mr. Hall's testimony, it was unbelievable. But again, on this issue, improper comment during closing argument do not rise to the level of reversible error unless they are so prejudicial that they deny a fair trial. That did not happen because the remark was brief. The court instructed counsel to move on, which she did, and there was substantial evidence to support the verdict in the form of the videotape that showed exactly what happened. Whatever dent was in Mr. Hall's credibility because he couldn't have a witness to corroborate him could not possibly have been the determining factor because, again, this was not a case where it was conflicting witness testimony. Instead, the jury could view for itself what happened. And then finally, the court gave an instruction that cured whatever remaining prejudice there possibly could have been, and that was that a wit party does not have the obligation to call every witness that might have knowledge about the facts. So in light of all that, this, again, on this issue, Mr. Hall cannot make the showing he needs to make to show that there was reversible error. Don't repeat yourself. Unless there's any further questions, we respectfully ask this court to affirm the judgment. So be it. That's fine. Thank you very much, Counsel. Thank you, Your Honor. The case will be taken under advisement.